UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cv-00075-GFVT-EBA |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BRANDON ROSS WILLIAMS and | ) | **&** |
| REFUND HQ, LLC, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

**\*\*\*  \*\*\*  \*\*\*  \*\*\***

This matter is before the Court on the United States' Motion for Preliminary Injunction. [R. 15.] For the following reasons, the preliminary injunction is **GRANTED in part**.

**I**

Brandon Ross Williams is a Kentucky resident and tax preparer who owns Refund HQ, LLC. [R. 1 at 3]. Refund HQ is a tax preparation service that employs at least five other tax preparers. *Id.* According to Williams, "Refund HQ utilizes several independent contractors to assist in the preparation and filing of its customers' tax returns." [R. 19-1 at 2]. Refund HQ uses a third-party software called TaxWise to assist in the preparation and filing of tax returns.[1] *Id.* Williams has been a tax preparer since 2002. [R. 1 at 3]. Williams obtained a Tax Preparer Identification Number (PTIN) ending in 6023 from the Internal Revenue Service in 2002. *Id.* at 4.

---

[1] In its complaint, the government notes that Williams is not an accountant, but rather "attained his tax preparation knowledge through training provided by a former employer and through continuing education programs provided by a computer software provider." [R. 1 at 3–4].

The IRS previously assessed penalties on Williams under 26 U.S.C. § 6695(g) for failure to exercise due diligence when claiming Earned Income Tax Credit (EITC) for customers. *Id.* In 2015, the IRS assessed $53,750 in tax return preparer penalties. *Id.* Again in 2018, the IRS assessed $23,970 in tax return preparer penalties. *Id.* On October 4, 2023, the Office of the Kentucky Secretary of State administratively dissolved Refund HQ after it failed to file an annual report with the Commonwealth. *Refund HQ Certificate of Administrative Dissolution*, Kentucky Secretary of State Michael G. Adams (Oct. 4, 2023), https://web.sos.ky.gov/corpscans/92/1242092-06-99999-20231004-ADS-10122739-PU.pdf. As of November 2025, Refund HQ is an inactive Kentucky Limited Liability Company in bad standing.[2] *Id.* The IRS investigated Williams in 2023 and discovered that he "appeared to have prepared tax returns with false information. [R. 1 at 4]. Specifically, the IRS "discovered that Mr. Williams's returns often contained false, fraudulent, and bogus claims." *Id.* These allegations boil down to two principal claims. First, the government contends that Williams inflates or reduces income and expenses for the purposes of maximizing an earned income tax credit for his customers. *Id.* Second, the government contends that Williams signs tax returns with the names and PTINs of other Refund HQ tax preparers. *Id.*

The EITC is "a refundable credit for low-income working individuals and families. When the [EITC] exceeds the amount of taxes owed, the taxpayer receives a refund for the excess amount." *United States v. Allen*, 242 F. App'x 303, 305 (6th Cir. 2007); 26 U.S.C. § 32. The government alleges that Williams used several methods to manipulate the EITC for his customers. First, the government states that Williams submitted "fabricat[ed] or infalat[ed] losses

---

[2] At the motion hearing, Williams informed the Court that the State administratively dissolved Refund HQ LLC as a result of the failure to comply with annual filing requirements. Williams noted that he has operated his tax return preparer business as a sole proprietorship in the meantime.

claimed on a Schedule C filed with returns."[3]  [R. 1 at 5]. The United States interviewed 32 customers and 18 of them reported that he and Refund HQ "either created a fictional business or claimed business expenses that the customer did not incur."  [R. 1 at 7]. These inflated or made-up Schedule C submissions fraudulently reduced taxable income, according to the United States. *Id.*

Business expenses are not the only way to manipulate an EITC. Different filing statuses can change a taxpayer's liability in a given year. For instance, a taxpayer with "head of household" status often receives a higher standard deduction than an individual with a status of "single" or "married filing separately."  *Id.* at 9–10. The number of dependents identified on a taxpayer's tax return also impacts their EITC. The complaint alleges that Williams misrepresented the filing status for nine of the customers whom the United States interviewed. *Id.* at 11. These misrepresentations "allowed Mr. Williams to claim tax rates, deductions, and credits that his customers were not otherwise entitled to."  *Id.*

The Internal Revenue Code and relevant rulemaking places due diligence requirements on paid tax preparers who determine a taxpayer's eligibility to file under head of household status or who determine eligibility for, or the amount of, EITC. 26 U.S.C. § 6995(g); 26 C.F.R. § 1.6695-2. One of these requirements is to prepare Form 8867, the "Paid Preparer's Due Diligence Checklist."  26 C.F.R. § 1.6695-2(b)(1). The checklist requires preparers to ask certain questions to their customers and requires the preparer to certify that "all of the answers on this [form] are, to the best of [their] knowledge, true, correct, and complete."  [R. 1 at 19]. The tax

---

[3] A "Schedule C" is an attachment for taxpayers who own a business or operate a sole proprietorship to report business income and expenses. An activity qualifies as a business if the taxpayer's "primary purpose for engaging in the activity is for income or profit" and the taxpayer is "involved in the activity with continuity and regularity."  [R. 1 at 5]; *see also About Schedule C (Form 1040), Profit or Loss from Business (Sole Proprietorship)*, Internal Revenue Service (last updated Nov. 3, 2025), https://www.irs.gov/forms-pubs/about-schedule-c-form-1040#:~:text=Use%20Schedule%20C%20(Form%201040,activity%20with%20continuity%20and%20regularity.

preparer "must not know, or have reason to know, that any information used by the tax return preparer in determining the taxpayer's eligibility… is incorrect." 26 C.F.R. § 1.6695-2(b)(3). The Internal Revenue Code provides that a preparer who fails to be diligent in determining eligibility for these benefits "shall pay a penalty of $500 for each such failure." 26 U.S.C. § 6995(g). The government alleges that Williams provided certified checklists "with tax returns on which he reported Schedule C expenses he knew to be false and tax returns on which he claimed an illegitimate or inflated EITC. [R. 1 at 19].

The government's second broad claim is that Williams failed to correctly identify tax return preparers by their names and identifying PTIN numbers. The Internal Revenue Code imposes penalties on preparers who do not identify themselves on returns they prepare for customers. 26 U.S.C. §§ 6695(b), (c). The government claims that Williams acted as a "ghost preparer" who prepared tax returns but then listed another person as the preparer. [R. 1 at 19]. Williams argues that he did not act as a "ghost preparer," but rather acted in collaboration with other employees to facilitate customer intake. [R. 19 at 4].

On December 19, 2024, the United States filed its complaint against Williams and Refund HQ, seeking a permanent injunction and disgorgement of ill-gotten gains. [R. 1]. The United States later made this motion for a preliminary injunction, arguing that the preliminary injunction would prevent future harm during the pendency of the action. [R. 15]. The government requested that the court hold a hearing. *Id.* Williams timely filed a response in opposition to the motion. [R. 19]. After the United States' reply in support, the Court held a hearing on the motion for a preliminary injunction on January 20, 2026, and took the government's motion under advisement. [R. 25].

In his response, Williams argued that that the United States is not entitled to an injunction under Sections 7402, 7407, or 7408 of the Internal Revenue Code. [R. 19 at 5–15]. Williams argues that the government "grossly overplays the significance" of the evidence used to support its motion for summary judgment. *Id.* at 1. He concedes that the Court may consider otherwise inadmissible hearsay evidence in the context of a motion for a preliminary injunction. *Id.*; *see Tactical Edge, LLC v. Garland*, 696 F. Supp. 3d 460, 463 (M.D. Tenn. 2023) ("In deciding a motion for preliminary injunction, a court may consider the entire record, including affidavits and other hearsay evidence"). Throughout his response, however, Williams bemoans the government's use of "hearsay memoranda," "self-serving summaries," and "unreliable triple-hearsay 'evidence.'" [R. 19 at 2]. Ultimately, Williams argues that the government cannot meet its burden for requesting an injunction under the Internal Revenue Code. Having been fully briefed and argued before the Court at the motion hearing, the government's motion now stands ripe for decision.

## II

The issuance of a preliminary injunction is an equitable remedy, the purpose of which is to prevent the occurrence of future acts that may result in irreparable injury, loss, or damage. 42 Am. Jur. 2d Injunctions § 1. An injunction does not "conclusively determine the rights of the parties," but rather "balance[s] the equities as the litigation moves forward." *Id.* Nonetheless, a preliminary injunction is an extraordinary remedy. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a). Parties take actual notice of the fact that proceedings against them may result in injunctive action where they object to the "district court's issuance of any orders that might adversely affect [their] interests." *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 483–

84 (6th Cir. 2002). "The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty*., 415 U.S. 423, 433 n.7 (1974). The Sixth Circuit has held that Rule 65 "contemplates that the issuance of a preliminary injunction shall be upon notice to the adverse party *and after a hearing*." *Cnty. Sec. Agency*, 296 F.3d at 484 (citing *Carpenter's Dist. Council v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958)) (emphasis in original).

The Internal Revenue Code authorizes the United States to bring civil actions against persons or entities for conduct subject to penalties under the Code. 26 U.S.C. § 7401. District courts have the authority to issue injunction orders. *Id.* § 7402(a). Specific to the facts of this case, the Court enjoys wide latitude to issue any one of three types of injunctions.

First, the Court may issue an injunction under Section 7402, a broad provision permitting injunctive relief "as may be necessary or appropriate for the enforcement of the internal revenue laws. *Id.* This broad authority allows the Court to issue an injunction "even where there was no violation of the internal revenue laws." *United States v. ITS Fin., LLC*, 592 F. App'x 387, 395 (6th Cir. 2014). Courts are independently authorized to issue injunctions under § 7402(a) and need not augment this authorization under other injunctive relief statutes such as § 7407 or § 7408. *Id.* at 396, 398.

Second, the Court can order injunctions under Section 7407 to enjoin "any person who is a tax return preparer from further engaging in any conduct described in subsection (b) or from further acting as a tax preparer." 26 U.S.C. § 7407(a). To issue an injunction under Section 7407, the Court must make two findings. First, the Court must find that the tax preparer has engaged any one of four types of specific conduct, contained in Subsection (b)(1):

6

(A) engag[ing] in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
(B) misrepresent[ing] his eligibility to practice before the Internal Revenue Service, or otherwise misrepresent[ing] his experience or education as a tax return preparer,
(C) guarantee[ing] the payment of any tax refund or the allowance of any tax credit, or
(D) engag[ing] in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws.

*Id.* § 7407(b)(1).

Second, the Court must find that "injunctive relief is appropriate to prevent the recurrence of such conduct." *Id.* § 7407(b)(2). Additionally, if the Court finds that the tax return preparer "has continually or repeatedly engaged in" such conduct and that "an injunction prohibiting such conduct would not be sufficient to prevent such person's interference" with the requirements of the Internal Revenue Code, the Court may "enjoin such person from acting as a tax return preparer" in total. *Id.* § 7407(b).

Third, the Court can order an injunction under Section 7408 to "to enjoin specified conduct related to tax shelters and reportable transactions." *Id.* § 7408. To issue an injunction under Section 7408, the Court must find that "(1) the person has engaged in any specific conduct, and (2) that injunctive relief is appropriate to prevent the recurrence of such conduct." *Id.* § 7408(b). The statute defines "specified conduct" as any action or failure to take action which is "(1) subject to penalty under section 6700, 6701, 6707, or 6708, or in violation of any requirement under regulations issued under section 330 of Title 31, United States Code." *Id.* § 7408(c). Section 6700 penalizes any person who organizes or participates in the promotion of abusive tax shelters or tax avoidance schemes which the person "knows or has reason to know is false or fraudulent as to any material matter." *Id.* § 6700(a)(B)(2). Section 6701 penalizes any person who knowingly prepares tax returns or claims that would result in the understatement of

the tax liability of another person. *Id.* § 6701(a). Section 6707 penalizes material advisors, as defined by 26 U.S.C. § 6111(b)(1), who fail to furnish information regarding reportable transactions.[4]  *Id.* § 6707(a). Section 6708 penalizes those individuals who fail to respond timely to the Secretary's request for certain reporting requirements. *Id.* § 6708(a).

Sections 7402, 7407, and 7408 all share a central step: the Court must find that injunctive relief is necessary or appropriate. *Id.* §§ 7402(a); 7407(b)(2); 7408(b)(2). How, then, does a district court determine whether injunctive relief is necessary or appropriate?  Generally, district courts balance four factors when evaluating whether to grant a preliminary injunction. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Traditionally, when "determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Id.* Some courts apply these traditional equity factors when evaluating injunctions under the Internal Revenue Code. *See, e.g., United States v. Ernst & Whinney*, 735 F2d 1296 (11th Cir. 1984). However, the Sixth Circuit does not follow this approach. The Sixth Circuit holds that the traditional equity factors are not relevant because 28 U.S.C. §§ 7402(a), 7407, and 7408 expressly authorize the issuance of preliminary injunctions. *ITS Fin.*, 592 F. App'x at 400; *see also United States v. Gleason*, 432 F.3d 678, 682 (6th Cir. 2005). Courts in this Circuit follow a different set of factors in determining whether an injunction brought under the Internal Revenue Code is necessary and reasonable to prevent future harm.

---

[4] 26 U.S.C. § 6707A(c)(1) defines reportable transactions covered by this statute.

8

District courts must assess the totality of the circumstances surrounding the defendants and their violations by considering five factors:

> (1) the gravity of harm caused by the offense;
> (2) the extent of the defendant's participation and the defendant's degree of scienter;
> (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve the defendant in such transaction;
> (4) the defendant's recognition of his or her own culpability; and
> (5) the sincerity of the defendant's assurances against future violations.

*Id.* In *ITS Financial*, the Sixth Circuit identified that district courts may use this standard in injunctions brought under Sections 7402, 7407, and 7408 where the injunction "is entered to prevent future violations." *Id.* at 400–01.

The Court evaluates the plaintiff's motion in two parts. First, the Court will individually analyze whether an injunction is appropriate under Sections 7402, 7407, or 7408. Second, the Court will apply the Sixth Circuit's factors test to determine whether an injunction is reasonable and necessary, an inquiry required by and affecting an injunction under any of the three sections.

**A**

**1**

First, the Court evaluates whether injunctive relief is appropriate or proper under the broad injunctive power of 26 U.S.C. § 7402(a).

"District courts have the power to issue writs and orders of injunction… as may be necessary or appropriate for the enforcement of the internal revenue laws."  26 U.S.C. § 7402(a). The Sixth Circuit has held that district courts have the authority under § 7402(a) to enter an injunction to "shut down" a tax preparation business, even where § 7407 "is directed at tax return preparers." *ITS Fin.*, 592 Fed. App'x at 397–98. In other words, § 7402(a) is an independent

9

source of authority for the district court, and the court need not pair an injunction issued under 7402(a) with other statutes such as § 7407 or § 7408. *Id.* at 395. Courts have even used the broad scope of § 7402(a) to issue injunctions against individuals and businesses whose practices left them outside of the legal definition of tax return preparers, but who nonetheless undermined tax laws. *Id.* at 397; *United States v. Elsass*, 978 F. Supp. 2d 901, 941 (S.D. Ohio 2013). The United States, as the movant, must show that an injunction is necessary and proper to enforce the internal revenue laws. *United States v. Wilson*, No. 5:08-CV-00474-KKC, 2009 WL 1465878, at *1 (E.D. Ky. Apr. 6, 2009). The government makes such a showing by providing facts indicating that the defendant abused the income tax laws of the United States. *United States v. Hinz*, 126 F. Supp. 3d 921, 930 (N.D. Ohio 2015).

The United States takes the position that an injunction in this case is appropriate under 7402(a). [R. 15-1 at 11, n.3]. In support of their position, the government has provided numerous instances of the defendants' continuing failure to abide by the Internal Revenue Code.

An extensive IRS investigation found that Williams failed to identify himself as the preparer of numerous returns, leading the IRS to estimate that he may have prepared as many as 2,051 returns in 2023 despite personally certifying only 806. [R. 15-3 at 8]. The IRS suspected that "the decrease in the number of returns prepared by Mr. Williams under his PTIN would appear to indicate that Mr. Williams' abusive preparer tactics were decreasing in response to IRS investigations into his practice." *Id.* at 6. This is a violation of the tax code and subject to penalties under 26 U.S.C. § 6695(g). *See also* 26 U.S.C. § 6109.

The same IRS investigation unveiled instances where Williams filed inaccurate and false Schedule C forms. Notably, the IRS penalized Williams for this same behavior in the recent past. [R. 15-3 at 9–10]. In the instant case, the IRS investigation revealed that Williams created fake

10

businesses or business expenses without his customers' knowledge or awareness that he was doing so. *Id.* at 12. In fact, of the customers the IRS interviewed, more than half had tax returns with fraudulent entries on their Schedule C submissions. *Id.* Customers reported that Williams would not ask for business records before submitting Schedule C forms on their behalf. *Id.*

The IRS also determined that Williams regularly claimed incorrect filing statuses for clients, despite his knowledge that they did not qualify for such status. *Id.* at 14. Williams would in fact encourage married clients to file separately and claim Head of Household status, which married couples by definition do not qualify for. *Id.*; 26 U.S.C. § 2(b). Of the 806 returns that Williams filed, 518 (65 percent) contained either a Schedule C or Head of Household filings status. *Id.* The IRS compared Williams' activities to other preparers in the Commonwealth. Williams' activities stood out as abnormal. According to the IRS, "[i]n 2023, the average tax preparer in Kentucky claimed a total of $383,089 in EITCs for their customers. In 2023, Mr. Williams' EITC claims exceeded the Kentucky average by over $3 million."[5]  *Id.* at 11.

The facts as alleged indicate that Williams and Refund HQ violated the internal revenue laws through their actions. It is notable that the defendants do not offer much evidence in their response to rebut the government's allegations aside from the affidavit of Williams himself and one of his independent contractors who prepares taxes for Refund HQ. *See* [R. 19-1; R. 19-2]. The defendants do point out that "the IRS estimates that around 33 percent of EITC are paid in error" and that the "complexity of the law" may cause this. [R. 19 at 8]. The defendants state that other alternative explanations could exist, such as the "the Defendants' EITC for their customers are comparable to other similarly-situated tax preparers." *Id.* Defendants do not, however,

---

[5] The IRS' analysis contrasting Williams' activity to other preparers in Kentucky is striking. In 2023, the average Kentucky tax preparer prepared 680 returns. Williams prepared 2,051. The average Kentucky preparer filed returns claiming an EITC 20 percent of the time, whereas over 51 percent of Williams' returns claimed an EITC. [R. 15-3 at 11].

address the IRS investigation which found that Williams' returns claimed an EITC 51 percent of the time whereas the average Kentucky tax preparer claimed an EITC in just 20 percent of their filings. [R. 15-3 at 11]. Defendants also suggest that "human error could factor into the equation." [R. 19 at 8]. Human error might explain the 31 percent difference between Williams and other Kentucky tax preparers. But the defendants offer no evidence to support this inference, despite the affidavits of two Refund HQ preparers. The Court cannot reach such an inference when compared to the evidence that multiple customers gave the IRS specific examples of deliberate acts by Williams to underreport their tax liability through various methods.

Instead of addressing the factual underpinnings of the government's complaint, the defendants' response addresses the reasonableness factors in step two of the preliminary injunction analysis. The Court addresses these arguments in Part B. Without yet reaching the reasonableness prong, the Court finds that the government has met its burden in establishing that a preliminary injunction against defendants is proper under § 7402(a).

**2**

Next, the Court evaluates whether preliminary injunctive relief is proper under the specific injunctive power of 26 U.S.C. § 7407. Section 7407 grants a district court the power to issue an injunction to "enjoin any person who is a tax return preparer from further engaging in" tax preparation if the court finds that the defendant has engaged in certain listed conduct. 26 U.S.C. § 7407(a). A taxpayer is subject to an injunction if they (A) engaged in conduct subject to penalty under sections 6694 or 6695, (B) misrepresented their eligibility to practice before the IRS or misrepresented their experience or education as a tax preparer, (C) guaranteed the payment of any tax refund or credit, or (D) engaged in "any other fraudulent or deceptive conduct which substantially interferes with the proper administration" of federal tax laws. *Id.* §

12

7407(b)(1). The government alleges that Williams engaged in conduct subject to penalty under sections 6694 and 6695. [R. 21 at 5].

Section 6694 penalizes tax return preparers who unreasonably — or willfully and recklessly — understate a customer's tax liability. 26 U.S.C. §§ 6694(a), (b). A good faith exception exists if "it is shown that there is reasonable cause for the understatement and the tax return preparer acted in good faith." *Id.* § 6694(a)(3). A tax return preparer may rely in good faith on the information given to them by a client. 31 C.F.R. § 10.34(d). But a preparer must "make reasonable inquiries if the information appears to be incorrect, inconsistent… or incomplete." *Id.* This exception exists only for the "unreasonable" understatements, not willful or reckless ones. *Id.*

Section 6695 penalizes several acts. Pertinent to the facts of this case are the failure of a tax return preparer to sign a return, to furnish their PTIN, and to exercise due diligence in determining eligibility for certain tax benefits. Id. §§ 6695(b), (c), (g). Section § 6695 does not contain a good faith exception.

A § 7407 injunction may enjoin the defendant from further engaging in the specified conduct, or it may enjoin the defendant from acting as a tax return preparer entirely if the court finds that the preparer "has continually or repeatedly engaged" in the conduct. *Id.* § 7407(b). District courts have found that a preparer engages in conduct repeatedly and continuously where the defendant prepared and filed multiple tax returns that understated their clients' liability. *See United States v. Hargrove*, No. 3:16-CV-503-DJH, 2017 WL 2198190, at *10 (W.D. Ky. Feb. 28, 2017) (citation modified); *United States v. Powell*, No. 21-CV-10622, 2024 WL 1342678, at *9 (E.D. Mich. Mar. 29, 2024); *United States v. Miller*, No. CIV.3:09-1030, 2009 WL 4060274, at *5 (M.D. Tenn. Nov. 23, 2009).

13

The Court already analyzed the government's §§ 6694 and 6695 claims in its § 7402(a) analysis. The government alleges that Williams failed to identify himself as the preparer of numerous returns in violation of § 6695(g). The IRS investigation also highlighted numerous examples of Williams manipulating the tax status of his clients in order to understate their tax liability. Further, the interviews of Williams' own clients foreclose any argument that the reasonable care exception of § 6694(a)(3) should apply. Clients reported that Williams created fake businesses or business expenses despite knowing that the customers were not entitled to such deductions. Clients reported that Williams urged them to file under Head of Household status, even when married clients appeared *together* before Williams. [R. 15-3 at 14]. Williams suggests that he his employees acted in good faith in relying on the information furnished by their customers. [R. 19 at 15]. But there is no evidence, and defendants provide none aside from the affidavits of Williams and Pinson, suggesting that Williams relied in good faith upon inaccurate information provided by his clients. Instead, it appears from the IRS investigation and interviews that the inconsistent, incorrect, and inaccurate positions came from Williams himself. All of this behavior is subject to penalty under § 6694.

Williams' behavior, as evidenced by the IRS reports and other information, constitute continuous and repeated violations of §§ 6694 and 6695. The investigation into Williams focused primarily on tax returns from 2022 and 2021. [R. 15-3 at 1]. The IRS discovered from the interviews with individual clients that a majority of those filings contained fraudulent entries on Schedule C forms. By analyzing the returns submitted in 2023, a large majority of returns submitted with Williams' PTIN contained either a Schedule C or Head of Household filing status. *Id.* The IRS estimates that defendants' conduct "has cost the government an estimated $1.4 million in harm annually since 2020." Id. at 15. Notably, the IRS estimated that Williams

14

filed over 2,000 tax returns during the 2025 filing season even as the Kentucky Secretary of State lists Refund HQ LLC as an inactive business in bad standing. The government has met its burden in showing that defendants' behavior is ongoing, continuous, and repeated for the purposes of preliminarily enjoining Williams from acting as a tax return preparer.

Without yet reaching the reasonableness prong, the Court finds that the government has met its burden in establishing that a preliminary injunction against defendants is proper under § 7407 based on the predicate offenses subject to penalty under §§ 6694 and 6695.

**3**

Third, the Court evaluates whether preliminary injunctive relief is proper under the specific injunctive power of 26 U.S.C. § 7408.

Section 7408 empowers a district court to issue an injunction for specified conduct subject to penalty under §§ 6700, 6701, 6707, 6708, or for any violation of a requirement under regulations issued under 31 U.S.C. § 330. 26 U.S.C. § 7408. In laymen's terms, § 7408 permits an injunction against any person who:

> (1) promotes abusive tax shelters; (2) aids or assists in the understatement of tax liability; (3) fails to furnish information regarding reportable transactions; (4) fails to maintain lists of advisees with respect to reportable transactions; or (5) is in violation of any requirement under the regulations of the Treasury Department regarding practice before the Department.

35 Am. Jur. 2d Federal Tax Enforcement § 1084 (2025). The government alleges that Williams' violative conduct includes preparing "federal tax returns that include fictitious business expenses, fraudulent Schedules C, and improper filing statuses" which "understate tax liabilities and overstate tax refunds." [R. 15-1 at 14].

Defendants do not specifically argue that an injunction under § 7408 is inappropriate other than to say that the *Gleason* factors do not support the issuance of an injunction

whatsoever. [R. 19 at 5]. The Court previously addressed the government's claims in Subsections 1 and 2, above. In both cases, the Court found that the government met its burden in showing that the defendants have plausibly engaged in repeated behavior that violates the Internal Revenue Code. The Court has already found that this conduct constitutes the "understatement of tax liability" and because the government has produced evidence that Williams has "failed to furnish information regarding reportable transactions." *See* 26 U.S.C. §§ 6071; 6707. For that reason, the Court finds that an injunction under § 7408 is appropriate, without yet reaching question of whether such an injunction is reasonable and necessary under *Gleason*.

## B

Finally, the Court turns to the question of whether the Sixth Circuit's *Gleason* factors support the issuance of a preliminary injunction as reasonable and necessary.

It is well established that courts sitting in the Sixth Circuit do not need to apply the traditional equitable factors test when issuing an injunction under the Internal Revenue Code. *ITS Fin.*, 592 F. App'x at 400; *see also Gleason*, 432 F.3d at 682. At least for the issuance of permanent injunctions, the Sixth Circuit expects courts to follow the *Gleason* factors. Courts assess the totality of the circumstances surrounding the defendants' violations by considering

> (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation and the defendant's degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve the defendant in such transaction; (4) the defendant's recognition of his or her own culpability; and (5) the sincerity of the defendant's assurances against future violations.

*Id.*

The Circuit has not been clear in establishing whether the *Gleason* factors apply to district courts considering preliminary—rather than permanent—injunctions. Defendants cited the *Gleason* factors in their response. *See* [R. 19 at 5]. They did not, however, apply the factors

in any meaningful sense. The government, on the other hand, argued in their reply that "[the] factors have been applied only in the context of *permanent,* not preliminary, injunctions." [R. 21 at 11]. The government states they "could not find… cases where courts have applied [*Gleason*'s] factors to preliminary injunctions." *Id.* at 12. The government suggests that this is because the factors relate to relief on a permanent basis, a point which is well-taken. Both parties offered arguments via the application of the traditional equitable factors. *See* [R. 15 at 15]; [R. 19 at 15]; [R. 21 at 8].

However, the *Gleason* factors have been used in at least one instance the Court can identify. In 2023, Judge Berg of the Eastern District of Michigan used the *Gleason* factors when determining whether to issue a preliminary injunction against a tax return preparer under Section 7407. *United States v. Simmons*, No. 222CV11916TGBKGA, 2023 WL 2873358, at *10–12 (E.D. Mich. Apr. 10, 2023). Indeed, Judge Berg applied the *Gleason* factors specifically because the government sought a preliminary injunction under section 7407(b)(2) seeking a temporary but complete ban on the defendant's ability to act as a tax return preparer while the case proceeded. *Id.* at *10 (Stating in the context of applying the factors that "the Government is not only seeking an order prohibiting Defendants from engaging in the specific conduct alleged. Instead, the Government requests a preliminary injunction 'prohibiting Defendants from preparing any federal income tax returns.'"). Here too, the government seeks a temporary prohibition enjoining the defendants from "preparing or assisting in the preparation of federal tax returns and other tax-related forms." [R. 15-1 at 22]. Notwithstanding the government's argument, the language of the *Gleason* case and its progeny do not limit the application of the factors to permanent injunctions only. This makes sense considering the language of the injunction statutes themselves. Nowhere in sections 7402, 7407, or 7408 does the Internal

Revenue Code delineate between permanent and preliminary injunctions.[6] 26 U.S.C. §§ 7402(a); 7407(a); 7408(a).

The government is correct that any findings of fact by the Court would not be binding at future summary judgment proceedings or trial. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Even so, the Court will consult the applicable *Gleason* totality factors at this preliminary stage. The Sixth Circuit has explicitly and repeatedly reaffirmed that district courts need not use the traditional equitable factors when issuing injunctions under the power of the Internal Revenue Code. At least one district court in the Sixth Circuit applied the *Gleason* factors where the government sought a temporary but complete ban on the defendant from acting as a tax return preparer.

This brings the Court to an additional query. The Sixth Circuit is clear that the traditional requirements for equitable relief "need not be satisfied" when evaluating a tax injunction. *ITS Fin.*, 492 F. App'x at 400. In *ITS Financial*, the lower court had to pick a standard by which to determine whether an injunction was "necessary or appropriate." *Id.* The district court applied a standard asking whether the defendants "were reasonably likely to violate the federal tax laws again," using the *Gleason* factors to "predict the likelihood of future violations." *Id.*

The Court already discussed the question of whether the *Gleason* factors apply in determining whether to issue a preliminary injunction. The Court is also convinced that the use of the *Gleason* factors do not necessarily exclude any weighing of the traditional equitable factors. Indeed, several of the factors overlap. For instance, the first *Gleason* factor asks the court

---

[6] "The district courts of the United States… shall have such jurisdiction to make and issue in civil actions, writs and orders of *injunction*[.]" 26 U.S.C. § 7402(a) (emphasis added); "A civil action in the name of the United States to *enjoin* any person who is a tax preparer may be commenced at the request of the Secretary." *Id.* § 7407(a) (emphasis added); "A civil action in the name of the United States to *enjoin* any person from further engaging in specified conduct may be commenced at the request of the Secretary." *Id.* § 7408(a) (emphasis added).

to consider the "gravity of *harm* caused by the offense," which seems to overlap with the second and third traditional factors asking whether the "movant will suffer *irreparable harm* if the injunction is not issued" and "whether the issuance of the injunction would cause *substantial harm* to others," respectively. *Id.* at 400; *Overstreet*, 305 F.3d at 573 (emphasis added). In acknowledging this overlap, the Court finds that it is still appropriate to be mindful of the goals of the equitable factors outlined in *Overstreet*, even if the issuance of a tax injunction need not satisfy the traditional factors.

## 1

The first factor requires the Court to weigh the gravity of the harm caused by the offense. *Id.* In analyzing this first *Gleason* factor, the Court also considers the second and third traditional factors addressing irreparable harm to the movant and substantial harm to others.

The IRS investigation determined that the defendants' conduct "has cost the government an estimated $1.4 million in harm annually since 2020." [R. 15-3 at 15]. Without intervention, "the United States will continue to spend additional resources uncovering the various schemes as Defendants will continue to exert harm to the United States." *Id.* This is because any investigation into defendants' practices is necessarily reactionary. "The United States cannot determine this fraud prior to paying out the claimed tax refund to the clients." *Id.*

It goes without saying that such acts, if true, cause harm to more than just the federal government. These actions expose clients to action by the IRS, including accuracy-related penalties if an individual does not report their income accurately or if they claim deductions or credits for which they do not qualify.[7] *See* 26 U.S.C. § 6662. The defendants did not address the *Gleason* factors individually in their response, but they did argue that neither the government nor

---

[7] *See also Accuracy-related penalty*, IRS (Apr. 16, 2025), https://www.irs.gov/payments/accuracy-related-penalty.

the public will suffer irreparable harm. [R. 19 at 17]. The defendants argue that the injuries at stake are not irreparable but are rather compensable by money damages. *Id.*

The traditional factors ask the Court to evaluate whether the movant—i.e., the United States—will suffer irreparable harm if the injunction is not issued and whether the issuance of the injunction would cause substantial harm to others. *Overstreet*, 305 F.3d at 573. It is clear to the Court that the gravity of the offense is substantial, but whether that gravity represents an "irreparable" harm to the United States is not as clear.

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Id.* at 578 (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). As before, the government contends that Williams cannot obligate such money damages because "[d]efendants' practices result in erroneous refunds to third part[ies]," the defendants' customers. [R. 21 at 9]. The government argues that Williams' conduct makes complete enforcement "virtually impossible," but the Court is not convinced that this is necessarily true. The Court could, for instance, issue the preliminary injunction while permitting Williams to operate in a limited capacity under the supervision of a third-party auditor. Further, any damages that Williams incurs would be traceable as money damages, notwithstanding the difficulty and expense it would take to actually calculate what those damages are.

The issuance of a preliminary injunction would cause harm to some, not the least of which includes Mr. Williams himself, who would be banned from engaging in his livelihood for an entire tax season. The Court acknowledges the entry of a blanket injunction would have a devastating effect on Mr. Williams personally and professionally. On the other hand, the impact

of a preliminary injunction on those outside Mr. Williams' personal orbit would be small. His customers could simply go elsewhere for their tax preparation needs.

For these reasons, the Court finds that the first *Gleason* factor weighs in favor of issuing the preliminary injunction while the traditional equitable factors weigh in favor of issuing a preliminary injunction with a smaller scope than the government has asked for. The Court will address this in Section C.

**2**

The second factor asks the Court to inquire into the extend of the defendants' participation and the defendants' degree of scienter. *ITS Fin.*, 592 F. App'x at 400. Scienter, Latin for "knowingly," means "a degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages." *Scienter*, *Black's Law Dictionary* (12th ed. 2024). In other words, this factor asks the court to weigh the defendants' participation in the alleged acts and their knowledge that the acts violated the Internal Revenue Code.

There is no question that Williams and his company, Refund HQ, are the sole participants in the acts alleged by the government. There is no contention by the government or the defendants that other parties or actors are responsible for the understatement of tax liability alleged in the complaint. The parties disagree as to whether Williams knowingly acted in a way to underreport his clients' tax liability on their returns. Williams argues that the government relied on "selectively picked" customers who reported intentional manipulation of tax returns and that discrepancies can be explained by "human error" rather than by "bad acts and actors at play." [R. 19 at 8]. The government, on the other hand, produced evidence through the IRS investigation and the customer interviews and tax records that Williams repeatedly adjusted

clients' return statuses to reduce their tax liability using fraudulent means, and often without the customers' even knowing that he had done so. The IRS fined Williams for similar behavior twice in the past, and the Court notes the fact that Williams continues to operate his business in Kentucky despite being in bad standing with the Kentucky Secretary of State's Office.

Compared together, the government provided evidence that Williams acted in ways to deliberately and fraudulently reduce his clients' income tax liability. Williams suggests that this is attributable to other factors, generally, without providing rebuttal evidence. Because the government has met its burden in showing facts tending to indicate that Williams acted purposefully to flout the internal revenue laws, the Court finds that the second factor weighs in the government's favor.

**3**

The third factor asks the Court to weigh the isolated or recurrent nature of the infraction and the likelihood that the defendants' customary business activities might again involve the defendant in such transactions. The infractions are a recurrent theme of Williams' business practices. The IRS began investigating several years ago, and the IRS already fined Williams for infractions in 2013 and 2016. By the logic of his own arguments, Williams does not intend to stop acting as a tax preparer absent a court order. This third factor weighs in favor of the government.

**4**

The fourth factor asks the Court to weigh the defendants' recognition of his or her culpability. At this stage of the proceedings, defendants continue to vigorously deny that they have committed any wrongdoing. The Court does not expect a party to "recognize their own culpability" while simultaneously defending themselves in federal court against the United

States. For this reason, the fourth factor does not weigh in favor or either party and the Court does not consider it in the analysis of whether injunctive relief is appropriate.

**5**

The fifth and final factor asks the Court to consider the sincerity of the defendants' assurances against future violations. As with the fourth factor, the Court does not expect the defendants to—at this stage of the action—assure against further violations when the defendants deny that any violations have taken place. As such, the fifth factor does not weigh in favor of either party.

**C**

In conclusion, the Court finds that three of the *Gleason* factors weigh in favor of the appropriateness of issuing an injunction, while two of the factors warrant no consideration at this early stage of the litigation. Further, the Court's ruling is informed by the traditional equitable factors. Having considered the pleadings, arguments, and evidence, the Court finds that a preliminary injunction is appropriate to prevent the recurrence of the defendants' conduct interfering with the administration and enforcement of the internal revenue laws. However, rather than issuing a blanket ban on Williams and his business, the Court is prepared to tailor a more specific remedy that offers Williams the opportunity, should he choose to accept it, to continue acting as a tax return preparer under the supervision of a third-party auditor.

At the motion hearing, the Court asked the United States whether it was aware of any cases where the Court issued a preliminary tax injunction that allowed for the defendant to continue preparing tax returns under the supervision of a third-party auditor, or some other similar arrangement. Counsel for the United States informed the Court that she was aware of at least one case where this occurred, and the Court ordered the United States to file a notice in the

record of that case citation. Following the hearing, counsel for the United States filed that notice in the record, pointing the Court to a Stipulated Order for Preliminary Injunction issued by Judge Timothy S. Black in *United States v. Obgazion, et al.*, 3:12-cv-00095-TSB (S.D. Ohio October 29, 2012).[8] [R. 23-1]. Paragraph IX of that Order enjoins the *Obgazion* defendants from operating "without a third-party monitoring system to audit . . . compliance with the requirements of this order." *Id.* at 8. The monitoring system "must be administered by a third-party monitor" subject to several provisions, including that the Defendants must pay for the auditor and laying out the auditor's responsibilities. *Id.* at 8–10.

The Court is convinced this "third party auditor" approach successfully accomplishes many things. First, it gives Williams the opportunity to continue operating his business, albeit under the strict supervision of the auditor. Importantly, Williams does not have to hire the auditor: he could, in the alternative, elect to abide by the blanket ban of the injunction order. In other words, the third-party auditor is an option that Williams may elect as a condition of operating during the 2026 tax season.

Second, a third-party auditor would protect against the concerns raised by the United States. The United States suggests that Williams will cause harm by continuing to operate because any fraudulent tax refunds would flow to third parties, Williams' customers. By subjecting Williams to an auditor, approved by the government and paid for by Williams, the United States can be confident that Williams will not further defraud the United States during the 2026 tax season. This also protects Williams' customers, whose returns will benefit from an

---

[8] The Court notes that this Order appears to be the result of a negotiated arrangement between the United States and the *Obgazion* defendants. No such stipulated order has been agreed to by Williams and the United States. It goes without saying that the Court welcomes any attempt by the parties to come to a negotiated arrangement for the operation of Williams' business during the pendency of this litigation, and the Court will address any such proposed framework that the parties submit for approval.

"extra set of eyes" throughout this tax season and who will be able to continue using Williams'
services if they choose to do so, rather than forcing them to find alternative arrangements in the
upcoming filing year. For these reasons, the Court will give Williams the option of retaining a
third-party auditor as a way to operate in a limited way during the imposition of the preliminary
injunction.

### III

For the foregoing reasons, injunctive relief is appropriate, proper, and reasonable under
26 U.S.C. §§ 7402, 7407, and 7408. Accordingly, and the court being sufficiently advised, it is
hereby **ORDERED** as follows:

1. The United States' Motion for Preliminary Injunction **[R. 15]** is **GRANTED in part**.

2. The United States' Consent Motion for Extension of Time to File Response/Reply **[R. 20]** is **DENIED** as **MOOT**.

3. Subject to the optional provisions of Paragraph 5, Defendants are hereby **ENJOINED**, individually or through any business entity, from directly or indirectly:

   a. preparing or assisting in the preparation of federal tax returns and other tax-related forms;

   b. filing or assisting in the filing of federal tax returns and other tax-related forms;

   c. using a false or fictitious EIN, EFIN, Taxpayer Identification Number ("TIN"), PTIN, Social Security Number ("SSN"), or any other federally issued identification number to file or remit federal income tax returns;

25

d.  using an EIN, EFIN, TIN, PTIN, SSN, or any other federally issued identification number that belongs to another to file or remit federal income tax returns;

e.  allowing others the use of an EFIN, EIN, TIN, PTIN, or any other federally issued identification number to prepare or file federal income tax returns;

f.  using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN or EFIN; owning, managing, assisting, working for, profiting from, or volunteering for any individual, business, or entity that prepares or assists in the preparation of tax returns, amended returns, or other tax related documents or forms, including any electronically submitted tax returns or tax-related documents;

g.  transferring, selling, or assigning their customer lists and/or other customer information;

h.  engaging in activity subject to penalty under I.R.C. §§ 6694, 6695, or 6701; and

i.  engaging in conduct that substantially interferes with the proper administration and enforcement of tax laws.

4.  This preliminary injunction will remain in place through the resolution of the case on the merits.

## **OPTIONAL-THIRD PARTY AUDITING**

5.  It is further **ORDERED**, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408, that Defendants and any individual or entity acting in active concert or participation

with them, including representatives, agents, servants, employees, family members and/or any person, are **PRELIMINARILY ENJOINED**, directly or indirectly, by use of any means or instrumentalities, from operating without a third-party monitoring system to audit the defendants' compliance with the requirements of this Order. The monitoring system must be administered by a neutral third-party monitor ("Auditor") and shall include the following provisions:

a.  The provisions of <u>Paragraph 3</u> remain in effect any time that an Auditor has not been appointed by Order of this Court.

b.  The Auditor shall be a neutral, third-party certified public accountant (individual or firm) who shall be compensated by Defendants, and shall be approved in principle by a representative designated by the United States Department of Justice.

c.  Upon agreement of the parties, the parties shall submit a Motion for Approval of the Auditor to this Court. Once the Court approves the Auditor, the Defendants may begin operating subject to the provisions of <u>Paragraph 5</u>.

   i.  After approval of the Auditor, at no time shall the Defendants:

      1.  Use a false or fictitious EIN, EFIN, Taxpayer Identification Number ("TIN"), PTIN, Social Security Number ("SSN"), or any other federally issued identification number to file or remit federal income tax returns;

      2.  Engage in activity subject to penalty under I.R.C. §§ 6694, 6695, or 6701; and/or

      3.   Engage in conduct that substantially interferes with the
proper administration and enforcement of tax laws.

d.   Monitoring shall be performed from the earlier of January 29, 2026, or the
first day Defendants begin accepting tax returns for the 2026 season, and
shall continue through July 31, 2026.

e.   The Auditor may inspect any and all books and records to ensure that
Defendants comply with all terms of the injunction order and <u>Paragraph 5</u>.
The Auditor shall also randomly select, inspect, and review 3% of all tax
returns on a daily basis which Defendants may provide in electronic
format. As part of this review, the Auditor shall verify whether there is a
valid: Form W-2, Form 8879, TILA disclosure, Authorization to File
form, Fee Disclosure form, and Schedule C documentation.

    i.   The Auditor's review must include 3% of the tax returns processed
each day, and the review must be completed within seven business
days of filing the tax return.

    ii.   Defendants must also promptly provide the Auditor with all
information needed to conduct truly random, statistically valid
samples.

f.   Defendants shall execute all necessary consent forms required under 26
U.S.C. § 6103 for the I.R.S. or Department of Justice to communicate
directly with the Auditor.

g.   The Auditor shall provide an interim written report to the designated
representatives of the United States at the end of each month during which

Defendants prepares tax returns, including the results of the review, the identity of any customers whose tax returns fail to comply with the terms of this Order, and the identity of those tax return preparers who prepared any non-compliant returns, as well as the amount of fees or other amounts charged to each customer, and any other findings. The Auditor shall provide the United States with a final written report reflecting the foregoing on June 30, 2026.

h. The United States shall be permitted to engage in discovery during and following the monitoring period in accordance with the Federal Rules of Civil Procedure and the Scheduling Order [R. 14] to ensure compliance with this preliminary injunction.

i. When Paragraph 5 is in effect and Defendants are under the supervision of the Auditor, the Defendants may:

  i. Prepare or assist in the preparation of federal tax returns and other tax-related forms;

  ii. File or assist in the filing of federal tax returns and other tax-related forms;

j. Unless otherwise ordered by the Court, all other provisions of Paragraph 3 remain in effect.

This 29th day of January, 2026.

Gregory F. Van Tatenhove
United States District Judge