UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cv-00075-GFVT-EBA |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BRANDON ROSS WILLIAMS, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the United States' Motion for Order to Show Cause [R. 29]. On February 6, 2026, the United States moved for the Court to enter an order to show cause against Defendants Brandon Williams and his business entity, Refund HQ. The Court scheduled a show cause hearing on February 9, 2026. [R. 30]. On February 10, 2026, Williams filed a Motion for Order for Approval of Monitor. [R. 32]. The following day, Williams filed his Response in Opposition to the United States' motion. [R. 29]. The Court held the hearing on February 12, 2026, and took the pending motions under advisement. [R. 35].

**I**

The background of this case is already well-developed on the record. *See* [R. 26 at 1–5]. The United States seeks to permanently enjoin Williams from acting as a tax return preparer. Williams, of course, opposes this potential prohibition on the only livelihood he has known since 2002. The parties appeared before the Court twice in under one month: first to argue the preliminary injunction motion, and second to argue this motion for an order to show cause. The Court entered an order for preliminary injunction on January 29, 2026, barring Williams from "*preparing* or *assisting in the preparation* of federal tax returns and other tax-related

forms," among other proscriptions. *Id.* at 25–29 (emphasis added). In their motion for a show cause order, the government alleged that Williams remained open for business in defiance of the Court's order. [R. 29]. In support of their motion, the government presented two accounts of Williams' alleged malfeasance. First, an anonymous caller tipped off the government that Williams was open for business and violating the Order. *Id.* at 1. Second, the government included a declaration from IRS Revenue Agent Wael Ibrahim, who visited Williams' business. [R. 29-1]. Ibrahim observed "multiple individuals leaving Refund HQ with envelopes" and spoke to a man named Joe who stated that Williams "is preparing tax returns and asked [Joe] to come by to drop off his records." *Id.* at 2.

But the story does not end there. Williams responded by moving for the approval of a monitor, a provision of the preliminary injunction that would allow Williams to operate his business for the current tax season under the supervision of a court-approved neutral, third-party CPA monitor. [R. 32]. According to Williams, the parties had engaged in productive discussions regarding the appointment of a monitor. Williams proposed Andrea Paezold, a certified public accountant and the sole member of Paezold Tax & Accounting Services PLLC, to serve as the third-party auditor. The Department of Justice met with Paezold on February 2, 2026. [R. 32-2 at 3]. On February 3, 2026, Paezold formalized a monitoring agreement with Williams. *Id.* at 4.

During the show cause hearing, the Court questioned the parties at great length over the breakdown in negotiations regarding Paezold's appointment. The government contends that they take issue with Paezold's appointment on three grounds. First, counsel for the United States argued that they were not convinced that Paezold had the time to adequately monitor Williams under the terms of the Order. Second, they argued that Paezold's proposed monitoring would not be sufficient. And third, they argued that Paezold had not shown herself to be neutral through her

correspondence with government counsel and her submission of affidavits in support of two of Williams' motions. Williams countered all of these objections by pointing out that Paezold clearly meets the requirements for the third-party monitor as outlined in Paragraph Five of the Order. Williams suggested that the United States, through their actions, arguments, and continued objection to the third-party monitor provision had shown that they would *never* acquiesce to the approval of a monitor.

The Court asked the parties whether they believed that meaningful progress could be made toward Paezold's submission to the court. The Court also suggested that a second option existed: the appointment of an auditor from the Court directly, rather than by agreement of the parties. The Court took a brief recess to allow the parties to consider these questions. After reconvening, the government stated that they continued to object to the appointment of Paezold but welcomed the Court's direct appointment of a monitor. Williams, after addressing initial concerns, also stated that he did not object to the Court's direct appointment of a monitor.[1]

The parties also discussed the alleged violation of the preliminary injunction order. Williams asserted that he had not violated the Order. The government argued that Williams has violated the provisions barring Williams from *preparing* or *assisting in the preparation* of tax documents. In support of their argument, the government pointed to Williams' own exhibits. The exhibits are screenshots of messages sent between Williams and customers. In all three exhibits, Williams told the customers that he can take their paperwork but that he cannot yet submit their returns. Alarmingly, one of these exhibits included unredacted taxpayer information, and the

---

[1] Williams initially took issue with this option due to cost and timing concerns. By the end of the hearing, however, defense counsel confirmed that they would prefer the Court appoint a monitor to avail their suspicions that continued negotiations with the government would be fruitless.

Court will accordingly direct the Clerk of the Court to seal that exhibit. After additional discussion, the Court announced that it would take the outstanding motions under advisement.

## II

The issue before the Court is whether Williams violated the preliminary injunction order. The evidence shows that he has. But rather than hold Williams in civil contempt at this stage, the Court will issue a warning and provide additional written guidance.

The Court "always has jurisdiction to enforce its own orders." *McAlphin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th Cir. 2000). As such, a District Court's interpretation of its own order is entitled to great deference. *Kendrick v. Bland*, 931 F.2d 421, 423 (6th Cir. 1991). On a motion for civil contempt, the moving party bears the burden of proof in showing by clear and convincing evidence that the other party violated a prior order of the court. *Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 643 (6th Cir. 2015) (quoting *Glover v. Johnson*, 75 F.3d 264, 267 (6th Cir. 1996)). The order in question must be "definite and specific and ambiguities must be resolved in favor" of the party charged with contempt. *United States v. Conces*, 507 F.3d 1028, 1042 (6th Cir. 2007). The purpose of civil contempt remedies is to coerce future compliance with a court order. *See United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). A "district court has broad discretion to fashion an appropriate remedy" for civil contempt. *Williamson v. Recovery Ltd. P'ship*, 467 F. App'x 382, 396 (6th Cir. 2012).

At the show cause hearing, the parties debated whether Williams' actions constituted "preparation" of tax returns. Williams told customers that he could accept their tax information, including W-2 forms, and that he would be back open "in the next 24 hours or so." [R. 33-7]. He told another patron that "you can run by and drop off but we are currently on a temporary shut

4

down." [R. 33-9]. Another client, in an affidavit no less, stated that Williams told him "that I could leave my documents in a file so that they could prepare my tax return when they were back in operation." [R. 33-1]. Williams seemingly attempted to comply with the Order while trying to avoid losing customers to competitors. The Court cannot fault Williams for trying to stave off the decline of his business. But the Court cannot and will not ignore the fact that Williams is preliminary enjoined from preparing taxes. Defense counsel suggests that the "preparation" of taxes, barred by the preliminary injunction, only refers to the actual submission or filing of them to the IRS for processing. This is too clever by half.

Far more goes into tax preparation than just submitting returns to the IRS. The United States Code says as much where it defines a tax return preparer as "any person who prepares for compensation . . . any return of tax . . . or claim any refund of tax imposed by this title." 26 U.S.C. § § 7701(a)(36)(A). "The preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return[.]" *Id.* The basic dictionary definition of "prepare" leads to the same result: "To make ready beforehand for some purpose, use, or activity." *Prepare*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/prepare [https://perma.cc/7A53-XG7W] (last visited Feb. 12, 2025). Accepting tax documents from customers is, by any definition, an act in the furtherance of the preparation of a tax return to be submitted to the IRS. These acts are a violation of the preliminary injunction. Williams communicated with customers, accepted their tax documents, compiled files, and held himself out to the public as open to accept business when he was under a preliminary injunction barring him from "preparing or assisting in the preparation of federal tax returns and other tax-related forms" and "filing or assisting in the filing of federal tax returns and other tax-related forms." [R. 26 at 25].

5

Clear and convincing evidence supports this conclusion, not least because Williams supplied the strongest evidence for the violation himself in the form of the exhibits detailing his interaction with customers. Williams asked the Court to provide more definite language delineating what he could and could not do under the Order, before the appointment of a third-party auditor. Although he did not argue this point directly, Williams infers that the order's language was not definite and specific as to what constituted the "preparation" of tax returns. It should be obvious to someone in Williams' position that accepting tax documents and lining up customers while under the prohibition of a preliminary injunction is legally questionable, at best, and willfully ignorant, at worst. Nevertheless, the Court must draw any ambiguities in favor of Williams, the party charged with contempt. *Conces*, 507 F.3d at 1042. With this in mind, the Court will grant Williams' request to provide a thorough, but not exhaustive, explanation of what acts he can and cannot perform while the preliminary injunction remains in effect, before the appointment of the monitor.

How, then, should the Court address this violation? The purpose of any remedy is to coerce future compliance with a court order. *Bayshore Assocs., Inc.*, 934 F.2d at 1400. The Court is not bound or required to impose a fine on Williams, although fines—and even incarceration— are sometimes an appropriate coercive measure in some circumstances. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994). Instead, the Court will issue Williams a warning. Williams is now on notice that future chicanery will not be tolerated. The Order was clear: there is to be no tax preparation of any kind until the installation of a monitor by further order of this Court. A monitor will be duly appointed in this case. But in the meantime, Williams should trust that as long as the preliminary injunction remains in place, further violations of the Court's orders will not be dealt with lightly.

6

Williams violated the Order. But the Court will not hold Williams in civil contempt at this time. Civil contempt "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). Civil contempt is likewise inappropriate where a party's attempt at compliance was reasonable. *Id.* (citing 11A *Wright & Miller's Federal Practice & Procedure* § 2960 (3d. ed. 2025). Williams, to his credit, attempted to comply with the court order. His attempted compliance fell short, but he raised a fair argument as to a potential ambiguity in the Court's order. A warning, at this juncture, is an appropriate exercise of the "least possible power adequate to the end proposed," where the Court seeks to ensure continued compliance with the preliminary injunction order until the appointment of a monitor. *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 231 (1821)).

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The United States' Motion to Show Cause [R. 29] is **DENIED**.

2. The Clerk of the Court is directed to **SEAL** Exhibit H – Conversation with Kelsey Hoover" recorded at **[R. 33-8]**.

3. It is further **ORDERED** that Defendant Williams, his businesses, and all other entities enjoined from operating under the Preliminary Injunction order **SHALL NOT**:

   a. Collect, store, retain, hold, handle, or acquire any documents, communications, messages, forms, data, or information used in the

preparation or filing of federal or state tax returns for the current tax filing season.

 b. Communicate with any current, former, or prospective clients or customers regarding the preparation of tax returns, tax documents, and/or related activities for the current tax season.

 c. Make any communications, claims, promises, predictions, or assertions to the public regarding when and if Defendants can resume operations.

 d. Perform any activity promoting, advancing, or advertising the services of Defendants barred under the preliminary injunction order.

 e. This is a non-exhaustive list and in no way restrains the Court's authority to interpret past, present, or future violations of the Preliminary Injunction Order.

4. Paragraph Three (3) shall remain operative until the entry of an order by this Court appointing a neutral, third-party monitor under the provisions of the preliminary injunction order.

This 13th day of February 2026.

Gregory F. Van Tatenhove
United States District Judge

8